# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD K. WILSON, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-CV-2608 |
| | : | |
| LEON KING, ET AL., | : | |
|     Defendants. | : | |

## MEMORANDUM

**Tucker, J.**                                                                       February \_\_\_\_, 2010

Presently before this Court is Plaintiff's Motion to Strike the Answer of Defendants' Verizon, Inc., Jack Brennan and Louise Knight (Doc. 80) and Defendants' Response in Opposition thereto (Doc. 84). For the reasons set forth below, the Court denies Plaintiff's Motion.

## BACKGROUND

On September 19, 2008, Plaintiff filed a Third Amended Complaint (Doc. 52) against Defendants Verizon, Inc., Jack Brennan, Louise Knight, Louis Lombardi, and Derek Liss for allegedly engaging in a conspiracy against Plaintiff.[1] The pertinent facts giving rise to the alleged conspiracy are as follows. In 1993, Plaintiff opened a newsstand in Philadelphia, PA at the northwest corner of 16th Street and John F. Kennedy Boulevard in front of Suburban Station. In

---

[1] This case has a long and complicated past. The conspiracy case outlined in Plaintiff's Third Amended Complaint is completely unrelated to the alleged facts and circumstances underlying Plaintiff's Section 1983 case. On July 21, 2006, Plaintiff, then a pro se prisoner incarcerated in the Philadelphia Prison System, commenced a Section 1983 action against the City of Philadelphia and Mr. Leon King in his capacity as Commissioner of Prisons alleging poor prison conditions and improper medical treatment (Doc. 3). Plaintiff amended the Complaint on August 2, 2006 to add additional factual allegations (Doc. 4). On the same day, Mr. Leon King was terminated from the case. On August 10, 2006, Plaintiff filed a Second Amended Complaint (Doc. 7) to once again provide additional factual allegations concerning improper medical treatment while in prison. On January 22, 2008, Defendant City of Philadelphia and Leon King filed a Motion for Summary Judgment (Doc. 42). On September 3, 2008, the Court granted the Motion for Summary Judgment and dismissed Plaintiff's claims against the City of Philadelphia (Doc. 51).

1995, Plaintiff submitted an application to the Lottery Commission to obtain a license to sell Instant Tickets in his newsstand. Plaintiff was informed by the Commonwealth of Pennsylvania that he must have a telephone line installed to obtain the license. In June 1996, the City of Philadelphia passed an ordinance permitting Plaintiff to supply electricity to his newsstand. Plaintiff then contracted with an electrician to begin the construction project that Plaintiff estimated would have cost him no more than $4,000.00. On the day Plaintiff and his contractor started drilling on the sidewalk, Plaintiff alleges that Defendant Lombardi, General Manager of Compass Management and Leasing, Inc. ("CML") at Suburban Station, immediately came outside and stopped them from completing the work. Plaintiff claims Defendant Lombardi then had concrete poured over the contractor's work.

Sometime over the course of the next two years, Plaintiff sought legal assistance from Attorney Derek Liss to assist him in obtaining the requisite written permission from CML to complete the electrical work. Plaintiff must have inquired with Defendant Verizon, Inc. about an alternative way to supply a phone line to his newsstand instead of accessing conduits from Suburban Station. In December 1998, Plaintiff alleges that Defendant Verizon, Inc. presented him with a plan to run wire conduits from a location further up the street and quoted that the job would cost at least $25,000.00. As this was cost prohibitive, Plaintiff looked again for an alternative. In 1999, Verizon expressed it would be willing to run a phone line from the second floor of Suburban Station if Plaintiff obtained permission from Suburban Station and SEPTA to do so. Presumably, Defendant Lombardi refused to grant permission.

Plaintiff claims that beginning in 1996, Defendants conspired and purposely engaged in the aforementioned conduct to prevent Plaintiff from installing a lottery machine in his

newsstand. Plaintiff further alleges Defendants knew Plaintiff could not survive without a lottery machine.

Plaintiff filed the Third Amended Complaint on September 19, 2008 (Doc. 52) seeking $150,000.00 in damages (Doc. 61). Plaintiff served the Complaint upon the Defendants on December 31, 2008 (Doc. 65), making the Defendants' answers due on January 20, 2009. Defendant Lombardi filed an Answer on January 9, 2009 (Doc. 67) and on January 12, 2009, Defendant Lombardi filed a Motion for Summary Judgment (Doc. 68). Upon consideration of Defendant Lombardi's Motion and the Plaintiff's Response in Opposition thereto (Doc. 75), the Court granted Defendant Lombardi's Motion (Doc. 76) and dismissed him from the case on July 17, 2009.

On November 11, 2009, Defendant Verizon, Inc. filed an Answer (Doc. 79) to Plaintiff's Third Amended Complaint.[2] In the Answer, Defendant generally denied the allegations set forth in Plaintiff's Complaint on the ground that it lacked sufficient information to formulate a belief as to the truth or falsity of the allegations. Defendant also asserted the affirmative defense that Plaintiff failed to meet the two-year statute of limitations Pennsylvania has with respect to conspiracy claims and requested that the Court enter judgment in Defendant's favor and dismiss Plaintiff's Complaint.[3]

On November 16, 2009, Plaintiff filed this Motion to Strike Defendant's Answer (Doc.

---

[2] Presumably, the Answer was also filed on behalf of Brennan and Knight as they are both named as Defendants in their official capacities as employees of Verizon, Inc.

[3] Specifically, Defendants cite Plaintiff's allegation that "[i]n January of 1996, this is when the Defendants . . . stated their conspiratory [sic] acts towards Plaintiff . . . and to this newsstand." Even assuming there was some illegal conspiracy, Plaintiff commenced this action 2008, more than twelve (12) years after the alleged conspiracy began and well beyond the two-year statute of limitations.

80). On November 25, 2009, Defendant filed a Response in Opposition thereto (Doc. 84). The Court now addresses this pending motion.

## LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A party may file a motion to strike within twenty (20) days after being served with the pleading. Id. Though the decision to grant a motion to strike under Rule 12(f) is within the court's discretion, motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." N. Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994) (citing River Road Dev. Corp. v. Carlson Corp., No. 89-7037, 1990 WL 69085, at *5 (E.D. Pa., May 23, 1990)). See also Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 664-65 (7th Cir. 1992). "Partly because of the practical difficulty of deciding cases without a factual record it is well established that striking a pleading should be sparingly used by courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." N. Penn Transfer, Inc., 859 F. Supp. at 158 (citing United States v. Consolidation Coal Co., no. 89-2124, 1991WL 333694 at *1 (W.D. Pa., July 5, 1991)).

## DISCUSSION

In his Motion to Strike, Plaintiff urges the Court to strike Defendant's Answer as untimely. Plaintiff served his Complaint upon Defendant on December 31, 2008. Under the Federal Rule of Civil Procedure 12(a), Defendant had twenty (20) days to file a responsive pleading to Plaintiff's Third Amended Complaint, making the Answer due on or before January

20, 2009. Defendant did not file an Answer until November 11, 2009, "three hundred days past the twenty day limit." Plaintiff contends Defendant violated the Federal Rules of Civil Procedure and that allowing Defendant to file the Answer so long after the deadline "is not fair."

Defendant disagrees and argues that the Court should deny Plaintiff's Motion to Strike for two reasons. First, Defendant argues that the instant motion should be denied because the Court previously denied Plaintiff's Motion for Default Judgment with prejudice on July 17, 2009. Defendant first cites Rule 55 of the Federal Rules of Civil Procedure, which provides the proper procedures for seeking an entry of default judgment. Defendant next relies on Antoine v. U.S. Bank Nat'l Ass'n, 547 F. Supp. 2d 30 (D.D.C. 2008), to explain that default judgment is inappropriate where a plaintiff fails to first seek entry of default from the clerk of court before filing their motion for default judgment. Defendant goes on to note that Plaintiff failed to seek an entry of default before filing his motion for default with the Court.[4] Defendant's second argument is that Plaintiff's motion to strike should be denied as moot because on November 19, 2009, three days after filing the motion to strike, Plaintiff filed a response to Defendant's answer (Doc. 82), and his reply, therefore, renders his motion to strike "nonsensical."

The precise issue in this case, which few courts, including the Third Circuit, have addressed is whether the untimely filing of a responsive pleading, particularly an answer to a complaint, is, on its own, a sufficient ground to strike the tardy pleading. In answering this question, courts in other jurisdictions have balanced the degree of prejudice suffered by the

---

[4] Defendant's brief fails to explain if and how that factor should influence the Court's decision concerning Plaintiff's present motion to strike its late answer. In addition, the Court is unclear why the single authority Defendant chose to cite is a district court decision from the District of Columbia which contains no discussion of a 12(f) motion to strike, but rather discusses the standards for a motion for default judgment under Rule 55(b)(2) and a motion to dismiss under Rule 9(b).

moving party with the desire to resolve cases on the merits rather than by default. See e.g., Marfia v. T.C. Zirant Bankasi, 100 F.3d 243, 249 (2d Cir. 1996) (indicating the preference that "litigation disputes be resolved on the merits" as the reason to deny motion to strike pleading).

The most analogous case to this matter is Canady v. Erbe Elektromedizin GMBH, 307 F. Supp. 2d 2 (D.D.C. 2004). In Canady, the defendants served the plaintiffs with counterclaims on August 5, 1997. Id. at 7. The plaintiffs' response was due within twenty days pursuant to Rule 12(a)(2) of the Federal Rules of Civil Procedure, however, the plaintiffs did not respond until March 10, 1998, "more than six months after the 20-day period had elapsed, and after the defendants had filed their first motion for entry of default judgment on February 27, 1998." Id. In their defense, the plaintiffs claimed they had a mutual understanding with the defendants that no issue would be raised regarding the tardy filing; the defendants however, denied any such understanding existed. Id. at 8.

The Canady Court refused to strike the plaintiffs' response even after acknowledging that it would be within the proper exercise of the court's discretion to do so. Id. In reaching this decision, the Court first highlighted that the defendants had sought the motion to strike in an effort to obtain default judgment on their counterclaim against the plaintiffs. Id. The Court went on to explain that granting a motion to strike under such circumstances would "contravene the established policies disfavoring motions to strike . . . and favoring the resolution of cases on their merits." Id. (". . . if the court were to rule in favor of the defendants, where would that leave the court and the parties? The answer to this question provides the guiding force for the court's decision.").

Frequently relying on the reasoning in Canady, other courts have also denied motions to

strike late pleadings in favor of deciding cases on their merits.  See e.g., Khadka v. Rajamani, No. 1:08cv1320, 2009 WL 910849, at * 2 (E.D. Va. Apr. 1, 2009) ("[T]he Answer was only one day late and its tardiness did not prejudice [the plaintiff] in the least.  Moreover, granting the motion to strike would allow the plaintiff to avoid resolving his case on the merits.  The Court will not sanction such an outcome."); Mitchell v. First Cent. Bank, Inc., No. 2:08CV6, 2008 WL 4145449, at * 2 (N.D. W.Va. Sept. 8, 2008) ("[D]efendants have not shown that they have been prejudiced in any way by [plaintiff's] late . . . answer to the counterclaim.  Furthermore, . . .defendants are seemingly seeking to strike . . . so that they can then proceed toward a default judgment.  Disposing of cases on the merits, however, is favored in this Court."); Azikiwe v. Nig. Airways Ltd., No. CV-03-6387, 2006 WL 2224450, at * (E.D.N.Y. July 31, 2006) (refusing to grant the plaintiff's motion to strike the defendants' answer that was filed one month late because of the disfavored status of motions to strike and the Second Circuit's "preference that litigation disputes be resolved on the merits, [and] not by default").
 Additionally, courts note that "[e]ven if a motion to strike is 'technically appropriate and well-founded,' motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party."  See e.g., Mitchell, 2008 WL 4145449, at * 2 (internal citation omitted).

  Here, the facts supporting Plaintiff's Motion to Strike appear stronger than Canady; Defendants filed their Answer ten months late versus the six month tardiness in Canady.  Nonetheless, the Court still finds that granting the motion is inappropriate under the present circumstances.  Similar to the defendants in Canady, Plaintiff's attempt to strike Defendant's Answer would leave the Court faced with the drastic remedy of default judgment.  This Court

finds that such an outcome would undermine the strong interest the Court has in resolving disputes on the merits. See Hill v. Williamsport Police Dep't, 69 F. App'x 49, 51 (3d Cir. 2003) ("Our Court 'does not favor entry of defaults or default judgments', . . . as it prefers adjudications on the merits."); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984) (stating the court's preference for deciding cases on the merits over default judgment); Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 2004) ("[W]e have repeatedly stated our preference that cases de disposed of on the merits whenever practicable."). Furthermore, Plaintiff has failed to demonstrate what prejudice, if any, he has suffered as a result of Defendants' late filing. For these reasons, the Court finds that the prejudicial effect on Plaintiff does not outweigh the significant interest the Court has in deciding the case on the merits. As such, the Court denies Plaintiff's motion to strike.[5]

## CONCLUSION

For the aforementioned reasons, Plaintiff's Motion to Strike Defendants' Answer to the Third Amended Complaint is denied. An appropriate Order follows.

---

[5] The Court would be remiss if it did not acknowledge and disapprove of Defendants' gross tardiness in this case. Defendants should not infer from the denial of the motion to strike that the Court will tolerate the unexplained and careless disregard of deadlines in the future.