IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD K. WILSON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-CV-2608 |
| | : | |
| LEON KING, ET AL., | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

Tucker, J.                                                                                                     March ____, 2010

Presently before this Court is the Motion for Summary Judgment filed by Defendants Verizon, Inc., Jack Brennan and Louise Knight (Doc. 85).[1] For the reasons set forth below, the Court grants Defendants' Motion.

**BACKGROUND**

On September 19, 2008, Plaintiff filed a Third Amended Complaint (Doc. 52)[2] against Defendants Verizon, Inc., Jack Brennan, Louise Knight, Louis Lombardi, and Derek Liss for allegedly engaging in a civil conspiracy to deprive Plaintiff of civil rights guaranteed under 42

---

[1] Presumably, the Motion was also filed on behalf of Brennan and Knight as they are both named as Defendants in their official capacities as employees of Verizon, Inc. Plaintiff also filed a Motion for Summary Judgment (Doc. 86), which the Court denied on January 5, 2010.

[2] This case has a long and complicated past. The conspiracy case outlined in Plaintiff's Third Amended Complaint is completely unrelated to the alleged facts and circumstances underlying Plaintiff's Section 1983 case. On July 21, 2006, Plaintiff, then a pro se prisoner incarcerated in the Philadelphia Prison System, commenced a Section 1983 action against the City of Philadelphia and Mr. Leon King in his capacity as Commissioner of Prisons alleging poor prison conditions and improper medical treatment (Doc. 3). Plaintiff amended the Complaint on August 2, 2006 to add additional factual allegations (Doc. 4). On the same day, Mr. Leon King was terminated from the case. On August 10, 2006, Plaintiff filed a Second Amended Complaint (Doc. 7) to once again provide additional factual allegations concerning improper medical treatment while in prison. On January 22, 2008, Defendant City of Philadelphia and Leon King filed a Motion for Summary Judgment (Doc. 42). On September 3, 2008, the Court granted the Motion for Summary Judgment and dismissed Plaintiff's claims against the City of Philadelphia (Doc. 51).

U.S.C. § 1983.³ The pertinent facts giving rise to the alleged conspiracy are as follows. In 1993, Plaintiff opened a newsstand in Philadelphia, PA at the northwest corner of 16th Street and John F. Kennedy Boulevard in front of SEPTA's Suburban Station. In 1995, Plaintiff submitted an application to the Lottery Commission to obtain a license to sell Instant Lottery Tickets in his newsstand. The Commonwealth of Pennsylvania informed Plaintiff that he must have a telephone line installed to obtain the license. In June 1996, the City of Philadelphia passed an ordinance permitting Plaintiff to supply electricity to his newsstand. Plaintiff contracted with an electrician to begin the construction project, which Plaintiff estimated would cost no more than $4,000.00. On the day Plaintiff and his contractor began drilling on the sidewalk, Plaintiff alleges Defendant Lombardi, General Manager of Compass Management and Leasing, Inc. ("CML") at Suburban Station, immediately came outside and stopped them from completing the work. Plaintiff claims Defendant Lombardi then had concrete poured over the contractor's work.

Sometime over the course of the next two years, Plaintiff sought legal assistance from Attorney Derek Liss to help him obtain the requisite written permission from CML to complete the electrical work. In December 1998, Plaintiff alleges Defendant Verizon, Inc. presented him with a plan to run wire conduits from a location further up the street and quoted that the job would cost at least $25,000.00. As this was cost prohibitive, Plaintiff looked again for another

---

³ Federal courts "must construe pro se complaints liberally, and such complaints are held to less stringent standards than those drafted by attorneys." Bush v. City of Philadelphia, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005). See also Fields v. Blake, 349 F. Supp. 2d 910, 915 (E.D. Pa. 2004) ("Because [the plaintiff] has filed his complaint pro se, [I] must liberally construe his pleadings, and . . . apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name"). Though Plaintiff, who has represented himself pro se throughout this process, did not explicitly state that his claim is for civil conspiracy under § 1983, the Court has construed his pleadings to assert such a claim, as this Court would be without jurisdiction to hear a claim for civil conspiracy under state law. Neither party should infer from the Court's construction of Plaintiff's claim that the Court has a position on the substantive merits of Plaintiff's claim.

alternative. In 1999, Defendant Verizon, Inc. expressed it would be willing to run a phone line from the second floor of Suburban Station, but only if Plaintiff obtained permission from Suburban Station and SEPTA to do so.

Plaintiff claims that beginning in 1996, Defendants conspired and purposely engaged in the aforementioned conduct to prevent him from installing a lottery machine in his newsstand. Plaintiff further alleges Defendants knew Plaintiff's business could not survive without a lottery machine.

Plaintiff filed the Third Amended Complaint on September 19, 2008 (Doc. 52) seeking $150,000.00 in damages (Doc. 61). Plaintiff served the Complaint upon the Defendants on December 31, 2008 (Doc. 65), making the Defendants' answers due on January 20, 2009. Defendant Lombardi filed an Answer (Doc. 67) on January 9, 2009, and on January 12, 2009, he filed a Motion for Summary Judgment (Doc. 68). Upon consideration of Defendant Lombardi's Motion and the Plaintiff's Response in Opposition thereto (Doc. 75), the Court granted Defendant Lombardi's Motion (Doc. 76) and dismissed him from the case on July 17, 2009.

On November 11, 2009, Defendant Verizon, Inc. filed an Answer (Doc. 79) to Plaintiff's Third Amended Complaint.[4] In the Answer, Defendant generally denied the allegations set forth in Plaintiff's Complaint on the ground that it lacked sufficient information to formulate a belief as to the truth or falsity of the allegations. Defendant also asserted the affirmative defense that Plaintiff failed to meet the two-year statute of limitations Pennsylvania has with respect to conspiracy claims and requested that the Court enter judgment in Defendant's favor and dismiss

---

[4] Presumably, the Answer was also filed on behalf of Brennan and Knight as they are both named as Defendants in their official capacities as employees of Verizon, Inc.

Plaintiff's Complaint.[5]  On November 16, 2009, Plaintiff filed a Motion to Strike Defendant's Answer (Doc. 80), which the Court denied on February 24, 2010 (Docs. 92-93).

On November 30, 2009, Defendants filed a Motion for Summary Judgment (Doc. 85). Plaintiff filed a Cross-Motion for Summary Judgment on December 7, 2009 (Doc. 86).  On December 10, 2009, Defendants filed a Response in Opposition thereto (Doc. 87), and on December 14, 2009, Plaintiff filed a Reply (Doc. 88).  On January 5, 2010, the Court denied Plaintiff's Motion for Summary Judgment (Doc. 90).  The Court now addresses Defendants' pending motion.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 268 (3d Cir. 2008).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under the governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  After the moving party has met its initial burden, "the adverse party's

---

[5] Specifically, Defendants cite Plaintiff's allegation that "[i]n January of 1996, this is when the Defendants . . . stated their conspiratory [sic] acts towards Plaintiff . . . and to this newsstand."

response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir.1992).

Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts must await trial. Id.

"Summary judgment is appropriate if a plaintiff's cause of action is barred by the statute of limitations." Fin. Software Sys., Inc. v. Lecocq, No. 07-3034, 2008 WL 2221903, at *3 (E.D. Pa. May 29, 2008) (citing Hersh v. Allen Prods. Co., 789 F.2d 230 (3d Cir. 1986)).

## DISCUSSION

The claim alleged in Plaintiff's complaint is a civil conspiracy to deprive him of civil rights guaranteed under 42 U.S.C. § 1983 ("Section 1983"). Section 1983 is not a source of substantive rights; rather, it is "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." City of Monterey v. Del Monte Dunes, 526 U.S. 687, 749 n.9 (1999). To prevail in an action under Section 1983, a plaintiff must prove: (1) a violation of a right secured by the Constitution and the

laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Because the basis of Defendants' Motion for Summary Judgment is a procedural deficiency, that Plaintiff's claim is barred by the applicable statute of limitations, it is unnecessary to address the substance of Plaintiff's conspiracy claim. See Bougher v. Univ. of Pittsburg, 882 F.2d 74, 78 (3d Cir. 1989) (Even where summary judgment is an appropriate disposition of a Section 1983 claim, the Third Circuit prefers "that the claim . . . be disposed on the threshold basis of the statute of limitations.").

**A. Statute of Limitations Analysis**

In their Motion for Summary Judgment, Defendants urge the Court to dismiss Plaintiff's claims with prejudice on the ground that the statute of limitations expired by the time Plaintiff filed his Complaint. Defendants note that the Third Amended Complaint, which Plaintiff filed on September 19, 2008, alleges Defendants engaged in a conspiracy against Plaintiff to prevent him from installing a telephone line in his newsstand. Defendants further note that all of Plaintiff's claims against them arise out of an alleged conspiracy that, according to Plaintiff, began in 1996. Relying on Wilson v. Garcia, 471 U.S. 261, 266-67 (1985), Defendants explain that the statute of limitations for a Section 1983 claim is the same as the forum state's statute of limitations for personal injury claims. Defendants next cite 42 Pa. Cons. Stat. § 5524 ("Section 5524") to explain that the statute of limitations for personal injury claims in Pennsylvania is two years. Defendants argue that, even assuming there were some illegal conspiracy between Defendants beginning in 1996, because Plaintiff did not file his Complaint until September 2008, the statute of limitations has terminated Plaintiff's claim.

Plaintiff's Cross-Motion for Summary Judgment, which the Court has previously denied, chiefly outlines information Plaintiff allegedly learned as the result of a complaint he filed with the Federal Bureau of Investigations ("F.B.I.") concerning Defendant Verizon, Inc.'s involvement in the alleged conspiracy.[6] In his Motion, Plaintiff claims that on June 9, 1998, the Philadelphia City Council withdrew the June 1996 ordinance previously granting Plaintiff permission to supply electricity to his newsstand. Plaintiff alleges Defendant Verizon, Inc. influenced the process by providing false information to the city's permit office. Plaintiff also avers that Defendant Verizon, Inc. allegedly sponsored its own ordinance for a location conflicting with Plaintiff's newsstand location, that Verizon's ordinance was passed on November 19, 1998, and that the passage of Verizon's ordinance effectively overthrew Plaintiff's deal with the city. Plaintiff contends that he did not become aware of Defendant Verizon, Inc.'s ordinance until December 2006 and that he did not learn that Defendant Verizon, Inc. sponsored the bill until November 2009.[7]

Actions brought under Section 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000) (citing Wilson v. Garcia, 471 U.S. at 276-80). In Pennsylvania, the statute of limitations for personal injury actions is two years, thus the statute of limitations for Plaintiff's claim for civil conspiracy under Section 1983 is also two years. See 42 Pa. Cons. Stat. §

---

[6] Plaintiff's Third Amended Complaint briefly mentioned that he complained to the F.B.I. about the alleged conspiracy; however, Plaintiff failed to indicate when the complaint was made. Specifically, Plaintiff states, "I went to the F.B.I. and filled out a complaint about the fraudulent acts." Notably, beyond that statement, the entirety of Plaintiff's Motion for Summary Judgment contains factual allegations that were not raised in Plaintiff's Third Amended Complaint.

[7] In Plaintiff's Motion for Summary Judgment, he also asserts for the first time that Defendants' conduct violated the Pennsylvania Consumer Protection Act.

5524(2); Fitzgerald v. Larson, 769 F.2d 160, 162 (3d Cir. 1985). In the Third Circuit, the statute of limitations period for a Section 1983 civil conspiracy begins to run from the commission of the each overt act causing injury. See Kost v. Kozakiewicz, 1 F.3d 176, 191 (3d Cir.1993). Altogether, to state a cause of action under Section 1983, Plaintiff's Complaint must allege that Defendant committed an overt act in furtherance of the conspiracy causing injury to Plaintiff during the two year period prior to the date Plaintiff filed the Complaint. See Bougher v. Univ. of Pittsburg, 882 F.2d at 79.

Plaintiff filed his Third Amended Complaint on September 19, 2008, which means the statutory period began two years earlier, on September 19, 2006. As such, Plaintiff's conspiracy claim must be restricted to overt acts Defendants allegedly committed on or after September 19, 2006. Any claim arising from Defendants' alleged overt acts which took place prior to September 19, 2006 is barred by the statute of limitations.

Plaintiff's Third Amended Complaint describes events and conduct that allegedly occurred between 1995 and 1999. Plaintiff explicitly states that "[i]n January of 1996, this is when the Defendants . . . stated [sic] their conspiratory [sic] acts towards Plaintiff . . . and to this newsstand." Under the most liberal construction of Plaintiff's factual allegations in the Third Amended Complaint, the last date on which any alleged overt act in furtherance of the conspiracy took place was January 14, 1999. To avoid being barred by the statute of limitations, Plaintiff would have had to commence this action no later than January 14, 2001. Plaintiff did not, however, commence this action until September 19, 2008, well beyond the two-year statute of limitations period. Construing the facts in the light most favorable to Plaintiff, because Plaintiff failed to allege any unlawful acts actionable under Section 1983 occurring after September 19,

2006, the Court can reach no other conclusion than Plaintiff's claim is time-barred.

### B. Inapplicability of the Discovery Rule and Equitable Tolling Doctrines

There are two doctrines which might apply in this case to extend the time period Plaintiff had in which to file his claim: the discovery rule and the equitable tolling doctrine. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994).[8] The Court will now address the applicability of both doctrines to Plaintiff's claim.

#### *a. The Discovery Rule*

In Plaintiff's Cross-Motion for Summary Judgment, he appears to argue that the statute of limitations did not begin to run until after December 2006 under the discovery rule theory. Specifically, Plaintiff contends that he did not become aware of Defendant Verizon, Inc.'s ordinance until December 2006 and that he did not learn that Defendant Verizon, Inc. sponsored the bill until November 2009.

In Pennsylvania, the discovery rule provides that the statute of limitations does not begin to run until "the injured party 'knows, *or in the exercise of reasonable diligence should have*

---

[8] [T]he discovery rule and the equitable tolling doctrine are similar in one respect and different in another. The doctrines are similar in that each requires a level of diligence on the part of the plaintiff; that is, each requires the plaintiff to take reasonable measures to uncover the existence of injury. The plaintiff who fails to exercise this reasonable diligence may lose the benefit of either doctrine. The two doctrines differ, however, with respect to the type of knowledge or cognizance that triggers their respective applications. The discovery rule keys on a plaintiff's cognizance, or imputed cognizance, of actual injury. Equitable tolling, on the other hand, keys on a plaintiff's cognizance, or imputed cognizance, of the facts supporting the plaintiff's cause of action. Underlying this difference between the discovery rule and equitable tolling is the more fundamental difference in purpose between the two rules. The purpose of the discovery rule is to determine the accrual date of a claim, for ultimate purposes of determining, as a legal matter, when the statute of limitations begins to run. Equitable tolling . . . presumes claim accrual. Equitable tolling steps in to toll, or stop, the running of the statute of limitations in light of established equitable considerations.

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d at 1390 (internal citations omitted).

*known*, (1) that he has been injured, and (2) that his injury has been caused by another's conduct.'" Gleeson v. Prevoznik, No. 06-4969, 2007 WL 3307211, at * 4 (3d Cir. Nov. 8, 2007) (citing Haines v. Jones, 830 A.2d 579, 585 (Pa. Super. 2003)) (emphasis added). "Thus, the 'polestar' of the discovery rule is not the plaintiff's actual knowledge of injury, but rather whether the knowledge was known, or through the exercise of reasonable diligence, knowable to the plaintiff." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d at 1386 (citing Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991)). "Even if the plaintiff is unaware that wrongful conduct caused his injury, or that he has a legal cause of action, the discovery rule will not toll the statute of limitations beyond such a time." Urland v. Merrell-Dow Pharm., Inc., 822 F.2d 1268, 1275 (3d Cir. 1987).

"To demonstrate reasonable diligence, a plaintiff must establish[ ] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." Mest v. Cabot Corp., 449 F.3d 502, 511 (3d Cir.2006). Thus, a key inquiry regarding whether due diligence was used is whether anyone objectively would be capable of discovering the cause of his or her injury. See Walsh v. Quinn, No. 09-167 Erie, 2009 WL 2207816 (W.D. Pa. July 23, 2009). "[W]hen information is available, the failure of a plaintiff to make proper inquiries is a failure to exercise reasonable diligence as a matter of law." Barnes v. Am. Tobacco Co., 984 F. Supp. 842, 857 (E.D. Pa.1997). See also Dreischalick v. Dalkon Shield Claimants Trust, 845 F. Supp. 310, 314 (W.D. Pa. 1994) ("If a party has means of discovery within her power but neglects to use them, her claim will be barred.").

For example, in Walsh v. Quinn, a pro se plaintiff filed a Section 1983 claim in 2007

against several defendants, including a judge, for allegedly engaging in a civil conspiracy under Section 1983 in connection with an earlier medical malpractice case. Walsh v. Quinn, 2009 WL 2207816, at * 1. Specifically, the plaintiff alleged that the judge presiding over her medical malpractice case against Saint Vincent Hospital, which lasted from July 2002 through July 2005, was biased because his daughter was employed by the hospital. Walsh v. Quinn, at *1. The plaintiff averred that as a result of the judge's bias, she was deprived of her right to procedural due process. Walsh v. Quinn, at *1. The plaintiff claimed (1) she did not learn of the connection between the judge and the hospital until she read an article in July 2007, which disclosed that the judge's daughter was employed by hospital; and (2) that the statute of limitations should be tolled based on the discovery rule. Walsh v. Quinn, at *1. The district court disagreed and dismissed the plaintiff's claim sua sponte for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), finding that the plaintiff's claim was untimely and the discovery rule did not apply to her case. Walsh v. Quinn, at *2. The court reasoned that the plaintiff "was capable of discovering and alleging a conspiracy before 2007" since "[t]he article, and alleged cause of action, had been published and available to the public in 2000 and there [were] no claims in the complaint that [she] was obstructed from using due diligence to discover the relationship between [the judge] and his daughter or other evidence that [she] believes to indicate a conspiracy." Walsh v. Quinn, at *2.

Here, like Walsh, this Court finds that the discovery rule is inapplicable to Plaintiff's case. Similar to Walsh where the plaintiff claimed to have discovered her cause of action only after reading an article made available to the public seven years earlier, Plaintiff in his Cross-Motion for Summary Judgement also claims to have discovered Defendant Verizon Inc.'s role in

the alleged conspiracy against him via various documents that were publicly available nearly a decade prior to the day he filed his Complaint. Plaintiff refers to an ordinance sponsored by Defendant Verizon, Inc. that was passed on November 19, 1998 and that allegedly had the effect of "overthrowing" Plaintiff's deal with the City of Philadelphia. Plaintiff also refers to "ordinance public hearings, [sic] and public meeting, [sic] before the Committee on Streets and Services" that occurred prior to the passage of Defendant's ordinance.[9] Furthermore, in Plaintiff's Complaint, as proof of the ongoing conspiracy, Plaintiff described various conversations and documents received between December 1998 and January 1999. Though he did not indicate a specific time in the Complaint, Plaintiff also indicated that he went to the F.B.I. to fill out a formal complaint about the alleged fraudulent acts. From his Cross-Motion for Summary Judgment, it is clear that Plaintiff had made contact with the F.B.I. no later than 2005.

Plaintiff's statements that Defendant Verizon, Inc. "hid" the existence of its November 19, 1998 ordinance and that Defendant engaged in activities in connection with the passage of its ordinance "without notifying" Plaintiff are insufficient to invoke the discovery rule. The means of discovery were within Plaintiff's power and it was the responsibility of Plaintiff, not Defendants, to protect Plaintiff's interests. Based on Plaintiff's own submissions to Court, the information that "uncovered" the conspiracy was readily available as early as 1998 and as late as 2005. In fact, Plaintiff's admission that he went to the F.B.I. to file a complaint against Defendants demonstrates that he suspected their involvement in "fraudulent acts" relating to the revocation of his ordinance some time between 1998 and 2005. More importantly, however,

---

[9] According to Plaintiff, "there was a hearing held in Room 400, City Hall [sic] Philadelphia, Pa [sic] Wednesday, October, [sic] the 28th 1998."

even if Plaintiff did not actually learn of his cause of action until 2006, the Court finds that, had he used reasonable diligence, he would have learned of it back in 1998. Just as Plaintiff went to the Philadelphia City Council Clerk's Office in September 2007 to search the archives and obtain copies of the documents he needed to substantiate his conspiracy claim, he could have easily done so in 1998. Furthermore, Plaintiff failed to allege any facts indicating that he was obstructed from using due diligence to discover that his ordinance was revoked in 1998 or any other evidence supporting the existence of the alleged conspiracy. Because the Court finds that Plaintiff had the means of discovery at his disposal nearly a decade prior to the date he filed his Complaint, the discovery rule does not apply to Plaintiff's claim, and the statute of limitations period cannot be tolled on the basis thereof.

### *b. The Equitable Tolling Doctrine*

To determine the statute of limitations period, the court must also incorporate any relevant state tolling rules. See Hardin v. Straub, 490 U.S. 536, 543-44 (1989). Federal courts may toll statutes of limitations for federal laws in limited situations using the principles of equitable tolling. See Lake v. Arnold, 232 F.3d at 370. "Equitable tolling stops the statute of limitations from running when the date on which the claim accrued has already passed." Id.

> Equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claim in a timely manner but has done so in the wrong forum.

Id. at 370 n.9. In the Third Circuit, "[e]quitable tolling is an extraordinary remedy which should

be extended only sparingly." Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005). Furthermore, equitable tolling is "unavailable unless the plaintiff exercised due diligence in pursuing his claims." Huertas v. City of Philadelphia, 188 F. App'x 136, 138 (3d Cir. 2006).

As aforementioned, the Court finds that Plaintiff did not exercise due diligence in pursuing his claim for civil conspiracy under Section 1983. Furthermore, even if Plaintiff exercised due diligence, he has failed to articulate any facts supporting why equitable tolling would apply in this case. Plaintiff has not filed his Complaint in the wrong forum. Plaintiff has not alleged any facts indicating that Defendant took any tangible steps to actively mislead Plaintiff with respect to his cause of action. And Plaintiff has failed to show that he was obstructed from using due diligence to discover the existence of the alleged conspiracy as the result of any extraordinary circumstance. For these reasons, the Court finds the equitable tolling principles inapplicable to Plaintiff's claim.

## **CONCLUSION**

For the aforementioned reasons, the Court finds that Plaintiff's claim must be dismissed as untimely.[10] Defendants' Motion for Summary Judgment is granted. An appropriate Order follows.

---

[10] The Court notes that granting any future request for leave to amend Plaintiff's Complaint would be futile. Plaintiff cannot amend the Complaint to state a claim on which relief could be granted because the case would be time-barred.